HAYDEN *v.* THE AGENT of the STATE PRISON at AUBURN, in the suit of RUSSELL *v.* WILLIAMS and others.

The levy of an execution upon sufficient personal property to pay it, is a satisfaction of the judgment as to junior incumbrances upon real estate; although in consequence of the sheriff's indulgence to the debtor, and the plaintiff's neglect to enforce it, the levy actually produces nothing to apply on the execution.

In order to establish such constructive satisfaction, it is not necessary for the junior incumbrancer to show any positive interference or direction of the plaintiff in the execution, in the omission to proceed diligently upon the levy.

The consequence of the laches or negligence of an officer of the state, which occasions loss or injury to an individual, are to be borne by the state, in the same manner as individuals would bear them for similar laches or negligence.

This doctrine applied to the neglect of the agent of one of the state prisons, to enforce a levy on an execution in his favor, and the judgment held satisfied as to a junior lien on real estate.

Oct. 26; Nov. 10, 1843.

THE contest in this case was between judgment creditors of Ezekiel Williams, each of whom claimed the surplus which arose from the sale of the mortgaged premises, in the suit of *Russell v. Williams.* The judgment in favor of the agent of the state prison was the prior lien, but Hayden and Buck, who had the next judgment, insisted that the former was satisfied as to them. It was proved before the master on the reference relative to the surplus, that the former agent of the prison on recovering the judgment, issued an execution against Williams, which was levied on his personal property exceeding in value many times the amount of the execution. This property was suffered to remain in the possession of Williams after the levy,

and was sold off by him, or otherwise disposed of in the course of his trade, so that it yielded nothing to apply on the execution.

Hayden and Buck attempted to prove that the former agent directed or requested the sheriff to suspend active proceedings on the execution after the levy; and there was conflicting testimony on that point. The testimony is omitted because the court did not determine the point.

The master reported that the agent of the state prison was entitled to the surplus, and Hayden and Buck excepted to his report.

*S. A. Goodwin*, (one of the Inspectors of the state prison,) for the Agent.

*P. G. Clark*, for Hayden and Buck.

THE ASSISTANT VICE-CHANCELLOR.—There is conflicting testimony in regard to the direction or active interference of Mr. Polhemus, the former agent, in the stay of his execution, and I prefer to dispose of the case without determining that question.

Probably if the controversy had arisen on a levy upon the same goods by Hayden and Buck at the date of their judgment, the execution of the agent of the prison would, on this testimony, have been held dormant, and to have lost its priority. And if the execution had thus become dormant, the judgment would be deemed satisfied as against the lien of the junior judgment, on the most latitudinarian construction of the rule of law on that subject.

But waiving these considerations, I have no doubt but that the levy was a satisfaction of the agent's judgment, so far that its lien upon real estate cannot be set up against a junior judgment. If the question were between the agent and the judgment debtor, it would be a different matter.

In *Green* v. *Burke*, (23 Wend. 490, 496,) the subject of satisfaction by a levy, received a very elaborate examination by Mr. Justice Cowen. But so far as I can discover, that case establishes no new doctrine on this point. Although the levy was held void, and therefore no levy, which was sufficient to

dispose of the motion for a new trial ; the learned judge, fully met and decided the other point, viz., that if there were a levy, it did not amount to a satisfaction. The question arose between the creditor in the execution, and the debtor. It appeared distinctly on the trial, (where I assisted the plaintiff as counsel,) that the property levied upon, was given up to the debtor, by the officer who made the levy. This fact is alluded to at page 502 of the reported case. The case was therefore like that of *Mickles* v. *Haskin*, (11 Wend. 125,) and like *Wood* v. *Torrey*, (6 Wend. 562,) when it came up on the motion of Torrey. And the subsequent case of *Ostrander* v. *Walter*, (4 Hill's R. 329,) proceeded on the same principle. The rule which Judge Cowen contends for, in *Green* v. *Burke*, is this : A levy upon sufficient personal property on an execution, is a satisfaction, *sub modo*, and not absolutely. If the levy fail in whole or in part, without any fault of the plaintiff in the execution, he may go to his farther execution. *Pro tanto*, it is not a satisfaction.

Under this rule, I presume it would be considered the plaintiff's *fault*, if he suffered the sheriff to give indulgence to the debtor for more than a year after the return day of the execution, without proof of that express interference which is requisite to show the execution to be dormant. The latter is *quasi* fraudulent. The former is negligence, not fraud. But without speculating upon the application of the rule laid down in *Green* v. *Burke*, I am satisfied to rest this case upon what appears to be the well settled doctrine on this subject; that a levy under the circumstances existing here, is a satisfaction of the judgment, as to junior incumbrances. The cases of *Wood* v. *Torrey*, (6 Wend. 562,) and *The People* v. *Onondaga C. P.*, (19 Wend. 79,) are in point, and forcibly illustrate the distinction between its application to third persons, and to the defendant in the execution.

It is urged in behalf of the present agent of the prison, that the agent represents the state, and that no neglect of duty or laches of his can be urged to invalidate or discharge the claims of the State upon its debtors. None of the cases cited for that purpose, support this proposition in its application to this transaction. One of these was the *United States* v. *Kirkpat-*

*rick*, (9 Wheat. 720,) in which the sureties of a collector set up as laches which discharged them, the omission of their principal to make quarterly returns and settlements as required by law, and the failure of the government to sue him on such defaults. The latter would have been no laches in an individual.

In the *United States* v. *Van Zandt*, (11 Wheat. 184,) a similar defence was attempted, under the provision of an Act of Congress which required a delinquent paymaster to be recalled; and the court held that the provision was for the protection of the government, and formed no part of the contract of the sureties.

The case of *Dox* v. *The Postmaster General*, (1 Peters' R. 318,) decided that the omission of the Postmaster-General · to file transcripts in the Treasury Department of the balances due from a defaulting Postmaster, and to sue for such balances, as directed by an Act of Congress, constituted no defence in an action against the sureties of the defaulter.

In *Seymour* v. *Van Slyck*, (8 Wend. 403, 422,) there is a dictum of the court, referring with approbation to the foregoing cases in the Supreme Court of the United States, and saying that it may admit of a very serious question, whether the state would be responsible, had there been laches of the officers. And it is declared in those cases, that *laches* is not imputable to the government. No one will question that doctrine. The difficulty is in its application. In the cases cited from Wheaton and Peters' Reports, the defence set up, was one which would not have prevailed between individuals. Such also was *The People* v. *Russell*, (4 Wend. 570,) where Chief Justice Savage, after referring to the United States cases, says, that " the government are placed on the same footing with in-" dividuals."

And in the *United States* v. *Nicholl*, (12 Wheat. 505,) the court, after citing the same authorities, declined to express an opinion upon the effect of an express agreement to indulge the principal, made by the agent of the treasury; had such agreement been proved.

And see *The People* v. *Jansen*, (7 Johns. R. 332,) in connection with *The People* v. *Russell* above cited.

If the agent of the prison had been the indorsee of a note, and had omitted to demand it and give notice of its non-payment to the indorser, could the government of the state say that no laches are imputable to the people, and hold the indorser liable? Certainly not. If the agent of the state suffers an execution to become dormant, or as to third persons constructively satisfied, cannot third persons who are prejudiced by such negligence, take the same advantage of it that they could were individuals the plaintiffs in the execution? It seems to me that to hold otherwise, would lead to intolerable consequences, and public policy does not require such a construction of the law.

The agent of the prison gives security for the faithful performance of his duty; and his sureties are liable, as well for his omission to protest a note, or to collect a debt, as they are for his using or misapplying the public money.

Without deciding whether the loss of the agent's judgment in this instance, is chargeable to the neglect of the late agent or the sheriff, or to both; I am satisfied that Hayden and Buck are entitled to the surplus money. The exceptions to the master's report are allowed, and the surplus will be paid out accordingly.